**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2162
_____

RASHAD WILLIAMS,
Appellant

v.

JOHN WETZEL; JOHN/JANE DOE'S, Director of SPC; MICHAEL OPPMAN;
SANDRA CALLAWAY, Inmate Accounting/SCI-Fayette; RHONDA HOUSE,
Grievance Coordinator SCI-Fayette; MARK CAPOZZA, Warden at SCI-Fayette;
DARLENE LINDERMAN, Former Mail Room Supervisor; KERI MOORE, Assistant
Grievance Officer of Secretary's Office of Inmate Grievances and Appeals;
PENNSYLVANIA DEPARTMENT OF CORRECTIONS; TRICIA SILBAUGH,
Current Mail Room Supervisor; DORINA VARNER; SCI-FAYETTE; BENJAMIN
LIEDHECKER, Lt. of Central Office and Director of SPC

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-20-cv-00663)
Magistrate Judge: Honorable Cynthia R. Eddy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 29, 2024
Before: SHWARTZ, RESTREPO, and FREEMAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 3, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Pro se Appellant Rashad Williams—an inmate at the State Correctional Institutional Fayette ("Fayette")—filed a complaint against several Department of Corrections officers and employees after he did not receive religious books he ordered from a company called Islamic Bookstore ("IBS"). The District Court granted the Defendants' motion for summary judgment. For the reasons that follow, we will affirm that judgment.

In an invoice dated August 26, 2019, IBS informed Williams that his order was delivered on August 5, 2019, to the Security Processing Center ("SPC") in Bellefonte, Pennsylvania. On August 29, 2019, Williams used Form DC-135A (Inmate's Request to Staff Member "RTS") to ask Defendant Michael Oppman, Fayette's business manager, about the whereabouts of his books, as he had not received them. Oppman responded by indicating that although he was no longer supervising the mailroom, he had asked the people there, determined that the books were not at Fayette, and posited that there were still at the SPC. Williams also sent a letter dated October 10, 2019, to the SPC "Director(s), Administrator(s), and/or Supervisor(s)" alleging that the SPC had held onto his books "for NO penological reason and NO regards to interfere with the practice of [his] religion." In the letter, Williams called on these individuals to resolve the issue "immediately" and threatened to "pursue this matter in federal court, until [he] receive[d] his property compensated or [got] an injunctive order against you (S.P.C.)."

On November 15, 2019, Williams filed a grievance using the DC-804, Part 1 form. It was received and processed by Facility Grievance Coordinator R. House, who rejected

2

it because Williams failed to submit it within 15 working days after the events upon which it was based. House does not provide further information, including the relevant dates used when arriving at this conclusion. Williams appealed to Facility Manager Mark Capozza, who rejected the appeal based on the same timeliness grounds cited by House. Capozza based his conclusion on the fact that the books were allegedly sent to the SPC on August 5, 2019, and Williams filed a grievance on November 15, 2019. Williams appealed to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Chief Grievance Officer D. Varner rejected the appeal on timeliness grounds as well.

After receiving the rejection of his final appeal, Williams sued, alleging violations under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") over the failure to provide the ordered religious books. Following a discovery period, both Williams and the Appellees filed motions for summary judgment. The District Court determined that Williams knew about the problem by August 26, 2019, at the latest—this being the date referenced in the IBS invoice—and waited until November 15, 2019, to file his DC-804, Part 1 form. The District Court thus concluded that he had failed to file the form within 15 working days of the event upon which the claim is based, and had thus failed to follow the mandatory protocol discussed in Sections 1.A.5. and 1.A.8. of the DC-ADM 804 Inmate Grievance System Procedures Manual. Because of this fact, the District Court determined that Williams had failed to properly exhaust the administrative remedies available to him, granted the Appellees' motion for summary judgment, and denied Williams's motion as moot. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review over orders granting summary judgment. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). We may affirm on any ground supported by the record. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

Under the Prison Litigation Reform Act ("PLRA"), an inmate cannot sue pursuant to § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. See Woodford v. Ngo, 548 U.S. 81, 85 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007).

A prisoner who fails to satisfy the rules of the grievance process of the prison in which they are incarcerated is procedurally barred from presenting their claims in federal court under the PLRA. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000). The filing of an untimely grievance does not satisfy the PLRA's exhaustion requirement, and therefore results in the prisoner's inability to bring their claim in court. See Spruill v. Gillis, 372 F.3d 218, 230–31 (3d Cir. 2004).

The DC-ADM 804 Inmate Grievance System Procedures Manual ("Manual") dictates the terms of the inmate grievance system in Pennsylvania. See, e.g., Brown v.

Croak, 312 F.3d 109, 111 (3d Cir. 2002). Section 1.A.3. of the Manual states that an "inmate is encouraged to attempt resolution of a concern informally by use of a DC-135A, Inmate Request to Staff Member [form] or direct conversation with the Unit Manager or Officer-in-Charge prior to submitting a DC-804, Part 1, Official Inmate Grievance Form." However, as per Sections 1.A.5. and 1.A.8. of the Manual, "[w]hen an inmate has a concern that he/she is unable to resolve, the inmate must submit his/her grievance to the Facility Grievance Coordinator/designee using the DC-804, Part 1 [form]" "within 15 working days after the event upon which the claim is based." Additionally, Section 1.C.2. of the Manual indicates that a "a reasonable extension of time for filing [a grievance] shall be permitted" and "will be considered on a case-by-case basis" after an inmate notifies the Facility Grievance Coordinator/designee of the reason for the delay and the Facility Grievance Coordinator/designee determines that an extension is appropriate.

In his brief, Williams argues that he has satisfied his exhaustion obligations through his use of the DC-135A, Inmate Request to Staff Member ("RTS") form and that the District Court erred by concluding that he had knowledge of the problem by August 26, 2019, at the latest. Construing his argument liberally, Williams contends that he was attempting to resolve the problem through the informal RTS resolution process, and therefore did not yet have a concern that he was unable to resolve. However, it is clear from the language of Williams's October 10 letter to the SPC that he was aware of the fact that he had a concern that he was unable to resolve, to the point that he threatened to pursue legal action in federal court. Since the rules of the Pennsylvania grievance

5

process require the submission of a grievance using the DC-804, Part 1 form within 15 working days of the event upon which the claim is based "[w]hen an inmate has a concern that he/she is unable to resolve," Williams had 15 working days from October 10 to file his grievance or request an extension of time to file a grievance through the procedure discussed in Section 1.C.2. of the Manual.  Since Williams did neither, his claims are barred even though he later filed an untimely grievance, see Spruill, 372 F.3d at 230–31 (3d Cir. 2004).  Therefore, summary judgment in favor of the Appellees was appropriate.

Accordingly, we will affirm the judgment of the District Court.